OPINION
{¶ 1} The defendant-appellant, Rudy Giddens, III, appeals from a judgment of the Allen County Court of Common Pleas finding him guilty of one count of burglary, in violation of R.C. 2911.12(A)(4), a felony of the fourth degree. Finding none of the arguments advanced on appeal to have merit, we affirm the appellant's conviction.
 {¶ 2} The pertinent facts and procedural history are as follows. On October 19, 2001, Diane Eagy got off work at 11:30 p.m. and drove home to her apartment, which was located at 102 North Greenlawn Avenue, in the village of Elida, Allen County, Ohio. After arriving home, Ms. Eagy checked her e-mail and decided to take a bath.
 {¶ 3} After drawing her bathwater and entering the tub, Ms. Eagy saw a person slip past her door. She grabbed a towel and walked towards the kitchen where she found the appellant, her next-door neighbor, stooped near the kitchen table, touching her purse. Ms. Eagy screamed "get out, get out" at the appellant and retreated to the bathroom. Moments later, she emerged from the bathroom wearing a robe and found the appellant standing just outside the door to her apartment. Words were exchanged, she closed the door and called 911.
 {¶ 4} The appellant entered a plea of not guilty to a one-count indictment for burglary, in violation of R.C. 2911.12(A)(4). On April 10, 2002, a bench trial was held and the court found the appellant guilty as charged. The appellant was sentenced to a term of four years of community control with the Adult Parole Authority and was remanded to the Allen County Jail for a period of sixty days, with two days credit for time previously served.
 {¶ 5} The appellant now appeals, asserting three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I {¶ 6} "The trial court's verdict that Defendant was guilty of burglary was against the manifest weight of the evidence."
 {¶ 7} In his first assignment of error, the appellant contends that his conviction was against the manifest weight of the evidence.
 {¶ 8} In determining whether a trial court's decision is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[1]
A judgment supported by some competent credible evidence which goes to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.[2]
Manifest weight arguments are to be sustained only in the most extraordinary cases.[3]
 {¶ 9} The statute under which the appellant was convicted, R.C.2911.12(A)(4), states:
 {¶ 10} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 11} "* * *
 {¶ 12} "(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
 {¶ 13} The record herein demonstrates the following relevant evidence. At the appellant's trial, Ms. Eagy testified that upon arriving home from work, she checked her e-mail and drew a bath. She undressed, got in the tub, and turned off the water. After laying back in the tub, she saw a person walk past the open bathroom door. Ms. Eagy exited the tub, peered into the kitchen and saw a person standing there. She then grabbed a towel and went to the kitchen where she found the appellant stooped over her purse. She began screaming. The intruder looked up and was recognized by Ms. Eagy as her next-door neighbor. She screamed at him to get out, which he eventually did through the door to the breezeway, a common patio shared by herself and the appellant. Ms. Eagy then called 911.
 {¶ 14} Ms. Eagy testified that the appellant did not have permission to enter her apartment, nor did she hear him knock or otherwise announce his presence. On cross-examination, she testified that she did not know whether her door to the breezeway was locked or unlocked. According to Ms. Eagy, the breezeway door is located in her bedroom. Further, she testified that at the time the appellant entered her apartment, only the kitchen and bathroom lights were on.
 {¶ 15} Deputy Mefferd, testifying for the prosecution, stated that he, along with Deputy Baty, responded to Ms. Eagy's 911 call. The officers found the appellant standing in the doorway of his apartment. Deputy Mefferd recognized the appellant as a former police officer. The deputy spoke with the appellant, who told him that he heard a noise coming from the breezeway and walked out there to investigate. Before walking out back, the appellant told his twelve-year-old son to get his gun, which the boy placed on top of the television.
 {¶ 16} The appellant took the stand and testified that he saw nothing on his side of the patio and walked through the door dividing his patio with Ms. Eagy's. He noticed that her screen door was shut, but that the other door to her apartment was open. He testified that the bedroom and bathroom lights were on. He stated that he knocked three times on the glass portion of the door and entered without saying anything. He then testified that he walked in to see if she was okay or if anyone had attempted to enter her apartment. When Ms. Eagy came out of the bathroom, she began screaming at him.
 {¶ 17} A complete review of the record of this matter does not lead this Court to conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice. We find the weight of the evidence clearly supports the decision rendered by the trial court. Therefore, the appellant's first assignment of error is without merit and is, accordingly, overruled.
 ASSIGNMENT OF ERROR NO. II {¶ 18} "Appellee's evidence was legally insufficient to support the verdict of the trial court."
 {¶ 19} For his second assignment of error, the appellant maintains the trial court's decision was against the sufficiency of the evidence. Regarding the legal standards of sufficiency of the evidence and manifest weight of the evidence, the Supreme Court of Ohio has stated that they are both "quantitatively and qualitatively different."[4] Whereas weight of the evidence refers to "inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other," sufficiency is a test of adequacy.[5]
 {¶ 20} Sufficiency of the evidence is the legal standard applied to determine whether the evidence is legally sufficient to support the trier of fact.[6] In essence, sufficiency is a test of adequacy and whether the evidence is legally sufficient to sustain a decision is a question of law.[7] In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[8]
 {¶ 21} After a thorough review of the record herein, as recited above, we are satisfied that there was substantial evidence from which the trier of fact could conclude that every element of the offense of burglary had been proven beyond a reasonable doubt. Therefore, we find there is sufficient evidence to support the trial court's decision in this case.
 {¶ 22} The appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III {¶ 23} "Whether appellant was denied effective assistance of counsel under Article I, Section 10 of the Ohio Constitution and theSixth Amendment of the United States Constitution."
 {¶ 24} In his final assignment of error, the appellant claims that he was denied effective assistance of counsel. We disagree.
 {¶ 25} To prevail on a claim of ineffective assistance of counsel, an appellant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[9]
In asserting his ineffective assistance of counsel claim, the appellant must overcome the presumption that a licensed attorney is competent and that his decisions constitute sound trial strategy.[10] We note also that an appellate court reviewing an ineffective assistance of counsel claim will not second-guess counsel's strategy.[11] Furthermore, debatable tactical decisions generally do not constitute a deprivation of effective counsel.[12]
 {¶ 26} The appellant argues that his defense counsel should have requested a Crim.R. 29 motion for acquittal at the conclusion of the state's case. The appellant maintains that the state clearly failed to present sufficient evidence to sustain a conviction at the close of its case, and that had trial counsel moved for acquittal it would have been granted. We disagree.
 {¶ 27} Failure to move for an acquittal under Crim.R. 29 is not ineffective assistance of counsel, where the evidence in the state's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the charged offense have been proved beyond a reasonable doubt, and that such a motion would have been fruitless.[13]
Our review of the record convinces us that the state's evidence, which consisted of the testimony of the victim and the arresting police officer, showed that reasonable minds could have reached different conclusions as to whether the elements of burglary had been proved beyond a reasonable doubt, and that a motion for acquittal would have been properly overruled. Thus, the defense counsel's failure to move for an acquittal under Crim.R. 29 did not fall below an objective reasonable representation.
 {¶ 28} Next, the appellant submits that his defense counsel was deficient for permitting him to be interviewed prior to the trial by the state without the presence of counsel. The appellant, apparently, is referring to remarks he made to the law enforcement personnel at the scene of the crime, statements that were introduced by the prosecution at trial. We note, however, that the appellant uttered the incriminating statements prior to being represented by counsel. In the absence of any case law supporting the appellant's position that the admission of this evidence was improper or that he was prejudice by the admission thereof, the appellant's argument fails.
 {¶ 29} The appellant also asserts that his defense counsel could have excluded evidence relating to an incident that occurred a month before the night of the burglary if he had filed for such an exclusion with a pretrial motion in limine. The incident involved cash and a collection of Susan B. Anthony dollars that turned up missing from Ms. Eagy's residence. No police report was filed concerning the missing money.
 {¶ 30} A motion in limine functions as a precautionary instruction "to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue until the trial court is better able to rule upon its admissibility * * * once the trial has commenced."[14] It is counsel's duty to make his own appraisal of the case and to decide when such motions are worth filing.[15] Due to the precautionary, interlocutory nature of a motion in limine, we are loath to find ineffective assistance of counsel for failure to file such a motion. Also, the appellant has not satisfied his burden of showing how counsel's failure to file a motion in limine prejudiced his case. As such, we cannot say that counsel's failure to file a motion in limine constituted ineffective assistance of counsel.
 {¶ 31} Finally, the appellant maintains that his counsel was ineffective in allowing the appellant and his son to testify at trial. Defense counsel had the option to have the appellant and/or his son testify, or not testify. If the appellant did not testify, the victim's testimony would stand unrebutted. The defense counsel's trial strategy was to take the risk and have the appellant testify to the fact that he had knocked on the appellant's door and only entered her residence out of concern for her safety. The appellant's son took the stand to testify that his father heard a sound next door, asked him to retrieve a gun, and then his father went next door to investigate. The appellant had little to lose in testifying, and, if anything, helped his case by at least raising the possibility that he had entered Ms. Eagy's residence for a legitimate purpose.
 {¶ 32} "Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics," and, absent a showing of prejudice, the defense counsel's calling to the stand of the appellant and his son will not be deemed erroneous.[16] The appellant has not proven how the result of his case would have been different had he and his son not testified. Consequently, the appellant has failed to demonstrate how his defense counsel's selection of witnesses resulted in prejudice.
 {¶ 33} Accordingly, the appellant's third assignment of error is overruled.
 {¶ 34} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 BRYANT, and WALTERS, JJ., concur.
[1] State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
[2] State v. Paxton (2000), 139 Ohio App.3d 48, 50.
[3] Thompkins, 78 Ohio St.3d at 387.
[4] Id.
[5] Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) at1594.
[6] State v. Smith (1997), 80 Ohio St.3d 89, 113.
[7] Thompkins, 78 Ohio St.3d at 386.
[8] Smith, 80 Ohio St.3d at 113.
[9] State v. Clemons (1998), 82 Ohio St.3d 438, 449-450, citingStrickland v. Washington (1984), 466 U.S. 668, 687.
[10] Strickland, 466 U.S. at 689-90.
[11] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[12] See Strickland, supra, at 689.
[13] See Id.; State v. Bradley (1989), 42 Ohio St.3d 136, 141-143;State v. Blake, Hamilton App. No. C-010337, 2001-Ohio-8747.
[14] State v. Grubb (1986), 28 Ohio St.3d 199, 201.
[15] State v. Vires (1970), 25 Ohio App.2d 70.
[16] State v. Hunt (1984), 20 Ohio App.3d 310, 312.